IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALICE J. BROWN, | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO.: 2:05-cv-1002-ID ) |
| ITPE HEALTH & WELFARE FUND, | ) ) ) |
|     Defendant. | ) ) |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has asserted five state law claims against the ITPE Health & Welfare Fund, but asserts no causes of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. All state law causes of action asserted by Plaintiff Alice J. Brown ("Plaintiff") are preempted by ERISA. Because all of her state law claims are preempted and she has asserted no claim under ERISA, Plaintiff has no viable cause of action and summary judgment is due to be granted.

Even if Plaintiff had asserted a claim for benefits under ERISA, summary judgment would still be appropriate. Plaintiff's claims concern the non-payment of her medical bills related to gastric bypass surgery. The ITPE Health & Welfare Fund's Plan ("the Plan") expressly and unambiguously excludes from coverage charges related to the "treatment of obesity." Plaintiff was diagnosed by Dr. Antonio Williams with "morbid obesity." Dr. Williams then performed gastric bypass surgery on Plaintiff to treat this condition. Accordingly, Plaintiff is not entitled to coverage of claims for these medical expenses and her claims are due to be dismissed as a matter of law.

## I. STATEMENT OF RELEVANT FACTS[1]

1. The ITPE Health & Welfare Fund was created on July 1, 1971, as the ITPE-NMU Welfare Plan under an Agreement and Declaration of Trust signed by representatives of the Industrial, Technical and Professional Employees Division of the National Maritime Union of America, AFL-CIO and representatives of employers who had entered into collective bargaining agreements with that ITPE-NMU. On June 1, 1989, the name of the Fund was changed to ITPE-NMU/MEBA Health & Welfare Fund. Then, on April 23, 1998, the name was changed to ITPE Health & Welfare Fund. The name of the union has since been changed to the Industrial, Technical and Professional Employees Union, AFL-CIO ("the Union"). (Tab 3 to Defendant's Evidentiary Submission ("Heery Aff.") at p.2 ¶ 3, Exh. A attached thereto).

2. The ITPE Health & Welfare Fund is a multi-employer benefit fund which was established pursuant to the collective bargaining agreement for the purpose of providing health and welfare benefits for employees of participating employers. (Heery Aff. at p.2 ¶ 4).

---

[1] Some of these the facts will differ from the version of facts which the ITPE Health & Welfare Fund contends are the true version of the facts that will be presented upon the trial of this case, if the case is tried. However, because this case is pending before the Court on a Motion for Summary Judgment, the ITPE Health & Welfare Fund will assume for the purposes of this motion that some of the facts are the way that Plaintiff says. Accordingly, the facts relied upon by the plaintiff are assumed by the ITPE Health & Welfare Fund to be true for the purposes of this Motion for Summary Judgment only and for no other purpose. See *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *modified by* 30 F.3d 1347, *cert denied* 513 U.S. 1110 (1995); *USX Corp. v. Cox*, 114 S. Ct. 900 (1995) (recognizing that the facts stated for the purposes of reviewing the ruling on the Motion for Summary Judgment may not be the actual facts).

3. The ITPE Health & Welfare Fund is administered by a joint Board of Trustees consisting of seven union representative and seven employer representatives. There are approximately 119 employers which contribute to the ITPE Health & Welfare Fund. (Heery Aff. at p. 2 ¶ 5).

4. The ITPE Health & Welfare Fund is funded through contributions from participating employers. All contributions to the ITPE Health & Welfare Fund made by these participating employers are in accordance with the terms of their collective bargaining agreements with the Union. These collective bargaining agreements specify the rates of contributions to be paid per hour worked by each covered employee. The procedures employed by the Board of Trustees of the Health & Welfare Fund in collecting employer contributions are specified in the Agreement and Declaration of Trust establishing the ITPE Health and Welfare Fund. (Heery Aff. at pp.6-7 ¶ 6, Exhibit A attached thereto).

5. The health and welfare benefits provided by the ITPE Health & Welfare Fund for employees of contributing employers include medical benefits, dental benefits, vision care, disability income, survivor income, death benefits and a scholarship program. (Heery Aff. at p.4 ¶10). Accordingly, the ITPE Health & Welfare Fund is "employee welfare benefit plan" within the meaning of Section 3(l) of ERISA. 29 U.S.C. § 1002(l).

6. Cantu Services, Inc. ("Cantu Services") performed a food services contract at Maxwell Air Force Base from approximately 1999 to October 2002 On June 17, 2002, Cantu Services entered into a collective bargaining agreement with the Union covering its food service employees at Maxwell Air Force Base for a period of November

2002 through December 1, 2005.[2] This collective bargaining agreement required that Cantu Services contribute to the ITPE Health & Welfare Fund $2.02 per hour for all straight time hours worked, plus all hours of paid vacation, holidays, and sick leave, for all of its food service employees at Maxwell Air Force Base. In addition, Cantu Services agreed to be bound by the Agreement and Declaration of Trust which established the ITPE Health & Welfare Fund and all amendments thereto. (Heery Aff. at p.3 ¶ 7, Exh. B attached thereto).

7. In or around October 2002, Central Alabama Food Services took over the food services contract previously held by Cantu Services. Central Alabama Food Services entered into a Memorandum of Acceptance Agreement with the Union, whereby Central Alabama Food Services agreed to accept the terms and conditions of the collective bargaining agreement entered into by Cantu Services on June 17, 2002. (Heery Aff. at p. 3 ¶ 8, Exh. C attached thereto).

8. On May 11, 2004, Central Alabama Food Services entered into another collective bargaining agreement with the Union with similar terms and conditions as the previous agreement, covering the period of May 1, 2004, through April 30, 2007. (Heery Aff. at p. 4 ¶ 9, Exh. D attached thereto).

9. Because Cantu Services and Central Alabama Food Services acted "directly as [] employers, or indirectly as the interest of an employer, in relation to an employee benefit plan," they are "employers" within the meaning of Section 3(5) of ERISA. 29 U.S.C. § 1002(5). Moreover, because Cantu Services and Central Alabama Food Service are

---

[2]Cantu Services had a previous collective bargaining agreement with the Union which was entered into in 1999. (Heery Aff. at p. 3 ¶ 7).

involved in "any activity, business or industry in commerce or which a labor dispute would hinder or obstruct commerce," they are engaged in an "industry or activity affecting commerce" within the meaning of Section 3(12) of ERISA. 29 U.S.C. § 1002(12).

10. Plaintiff was hired by Cantu Services in 2002 to work on the Food Services contract at Maxwell Air Force Base and subsequently enrolled in the ITPE Health & Welfare Plan. (Tab 1 to Defendant's Evidentiary Submission ("Brown depo.") at 16 (line 10), 40 (lines 18-20)). Plaintiff received a ITPE Health & Welfare Fund Plan ("the Plan") booklet which contained the Summary Plan Description ("SPD") and the Plan Document. (Brown depo. at 42 (lines 13-19)). Both the SPD and the Plan Document specifically excluded from coverage of all charges related to the "treatment of obesity."[3] (Heery Aff. at p. 4 ¶ 11, Exh E attached thereto at pp. 28 (ITPE 1086), 92 (ITPE 0218) ¶ (aa)).

11. When Central Alabama Food Services took over the Food Services contract at Maxwell Air Force Base from Cantu Services, Plaintiff remained employed at the same position with Central Alabama Food Services and remained a participant in the Plan until her employment with Central Alabama Food Services ended in July 2004. (Brown depo. at 13 (lines 13-15), 41 (lines 18-23), 42 (lines 1-17)).

12. Plaintiff was diagnosed in 2003 by Dr. Antonio Williams as suffering from morbid obesity. (Brown depo. at 58 (lines 6-13), Exh. 4 attached thereto at MSJ152). In

---

[3] In July 2002, the ITPE Health & Welfare Fund published a booklet which contained a SPD and the terms of the Plan. Both the SPD and the Plan specifically exclude from coverage all charges related to the "treatment of obesity." (Heery Aff. at p. 4 ¶ 11, Exh E attached thereto at pp. 28 (ITPE 1086), 92 (ITPE 0218) ¶ (aa)). The July 2002 Plan booklet remained in effect until a new booklet was published in August 2004. (Heery Aff. At p. 4 ¶ 11). This August 2004 booklet also excludes from coverage charges related to the treatment of obesity and still remains in effect today. (Heery Aff. at p. 4 ¶ 11, Exh. F attached therto at pp. 22 (ITPE0026), 78 (ITPE0083) ¶ (bb))

order to treat this morbid obesity, Plaintiff decided to have gastric bypass surgery. (Brown depo. at 58 (lines 14-20)). Gastric bypass surgery treats those who have morbid obesity by reducing the capacity of their stomach and causing their food to bypass a part of the stomach which absorbs much of the fat out of their food. (Tab 2 to Defendant's Evidentiary Submission ("Owes depo.") at 58 (lines 14-23), 59 (lines 1-20)). The intended purpose of gastric bypass surgery is to cause weight loss. (Owes depo. at 59 (lines 21-23), 60 (line 1); Brown depo. at 53 (lines 2-8)). Plaintiff did not consult the SPD or Plan Document to see if this surgery was covered under the Plan. (Brown depo. at 72 (lines 1-5)).

    13.    A nurse employed by Dr. Williams, Jennifer Owes, alleges that she contacted ITPE Health & Welfare Fund to determine if the gastric bypass surgery was covered under the Plan. Ms. Owes contends that she was informed that gastric bypass surgery was covered.[4] (Owes depo. at 25 (lines 2-23), 26 (lines 1-21)).

    14.    Ms. Owes did not review the SPD or the Plan Document, nor was she aware of their contents. She was not aware at the time she allegedly spoke to the ITPE Health & Welfare Fund employee that the SPD and the Plan Document specifically excluded charges related to the "treatment of obesity." (Owes depo. at 31 (lines 21-23), 32 (lines 1-5), 36 (lines 7-15); Brown depo. at 72 (lines 10-23), 73 (lines 1-5)). When Ms. Owes allegedly spoke with an ITPE Health & Welfare Fund representative, she was not asking for a clarification of the policy. Rather, without knowing any of the exclusions contained in the Plan, she was just asking whether the procedure was covered. (Owes

---

[4] The ITPE Health & Welfare Fund denies that any of its employees told Ms. Owes or anyone else that gastric bypass surgery was covered by its Plan. However, because factual disputes are construed against the moving party, this is listed as a fact for purposes of this motion only.

6

depo. at 33 (lines 4-23), 34 (lines 1-20)).

15. On January 30, 2004, Plaintiff underwent gastric bypass surgery. (Brown depo. at 57 (line 23), 58 (lines 1-5)).

16. After receiving invoices for medical bills related to the gastric bypass surgery, ITPE Health & Welfare Fund denied these claims because "weight loss and weight reduction services are not an eligible benefit." The ITPE Health & Welfare Fund sent Explanation of Benefit letters to the Plaintiff on March 17, 2004 and March 19, 2004. (Brown depo. at 81 (lines 12-23), 82 (lines 1-13), 84 (lines 7-20), Exh 2 attached thereto at MSJ 102 and MSJ 103).

17. Jennifer Owes was also informed of the denial of coverage for Brown's medical bills relating to the gastric bypass surgery. Ms. Owes alleges that she sent a letter to the ITPE Health & Welfare Fund on March 22, 2004, requesting that it reconsider its decision. The ITPE Health & Welfare Fund never changed its decision to deny coverage. (Owes depo. at 37 (lines 1-3, 23), 38 (lines 1-6), 42 (lines 18-23), 43 (lines 1-10), Exh. 1 attached thereto).

18. On September 2, 2005, a civil action styled "*Alice J. Brown v. ITPE Health and Welfare Fund*," Civil Action No.: CV-05-2295, was commenced by the Plaintiff in the Circuit Court of Montgomery County, Alabama against the ITPE Health & Welfare Fund. (*See* Complaint).

19. This lawsuit alleges five state law causes of action relating to Plaintiff's allegations that ITPE Health & Welfare Fund failed to pay for Plaintiff's gastric bypass surgery. Plaintiff alleges that the failure of ITPE Health and Welfare Fund to pay for the gastric bypass surgery breached a contract between Plaintiff and the ITPE Health &

Welfare Fund (Count Four). Plaintiff alleges that ITPE Health & Welfare Fund's alleged statement that it would pay for the procedure was a "false representation" (Count One) and that the misrepresentations were reckless, negligent or wanton (Count Three). Plaintiff alleges that the ITPE Health & Welfare Fund fraudulently failure to disclose that it would not pay for the procedure (Count Two). Plaintiff also alleges that the ITPE Health & Welfare Fund's failure to pay for the procedure constituted "bad faith" (Count Five). (*See* Complaint; Exhibit 8 to Brown depo.).

20. Plaintiff has not alleged any cause of action under ERISA. (*See* Complaint; Exhibit 8 to Brown depo).

21. The ITPE Health & Welfare Fund timely removed this case to the United States District Court for the Middle District of Alabama, Northern Division, on the basis that all of Plaintiff's claims are preempted by ERISA. (*See* Notice of Removal).

22. Plaintiff did not oppose or respond to the ITPE Health & Welfare Fund's notice of removal.

23. All of the medical bills which are claimed in this lawsuit involve Plaintiff's gastric bypass surgery. (Brown depo. at 52 (lines 12-21).

## II.   ARGUMENTS AND AUTHORITY

### A.   ERISA Preempts All of Plaintiff's Claims.

The only claims Plaintiff asserts against the ITPE Health & Welfare Fund are Alabama state law claims for false representation, fraudulent failure to disclose, negligent/reckless/wanton misrepresentation, breach of contract, and bad faith relating to

the ITPE Health & Welfare Fund's failure to cover Plaintiff's medical expenses for her gastric bypass surgery. The ITPE Health & Welfare Fund removed the case to federal court on the grounds that Plaintiff's claims are preempted by ERISA. Without question, the claims not only are preempted by ERISA but also are subject to "complete preemption" or "super preemption" which means that removal was appropriate and that the ITPE Health & Welfare Fund is entitled to summary judgment on Plaintiff's claims.

There are two kinds of ERISA preemption. First, "defensive preemption" requires the dismissal of any state law claims that "relate to" an ERISA plan. *See Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1212, 1215 (11th Cir. 1999) ("[D]efensive preemption does require dismissal of state-law claims."). Defensive preemption does not, however, furnish federal subject matter jurisdiction, and it cannot serve as a basis for removal to federal court. *See Butero,* 174 F.3d at 1212; *Kemp v. International Business Machines Corp.* 109 F.3d 708, 712, 714 (11th Cir. 1997). For removal to be appropriate, a second kind of ERISA preemption, referred to as "complete preemption" or "super preemption," must be present. *Id.* A state law claim is "super preempted" if the claim "relates to" an ERISA plan (the test for defensive preemption) *and* the claim "also falls within the scope of the civil enforcement section of ERISA, Section 502(a) 29 U.S.C. §1132(a)." *Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir. 1991); *see also Butero,* 174 F.3d at 1212 ("[T]he complaint must seek compensatory relief akin to that available under §1132(a); often this will be a claim for benefits due under a plan.") (citation omitted.).

If state law claims are super preempted, the claims are re-characterized as claims

arising under federal law for purposes of determining removal jurisdiction. *See, e.g., Engelhardt v. The Paul Revere Life Insurance Company,* 139 F.3d 1346, 1353 (11th Cir. 1998) ("If a state law claim is completely preempted, courts are required to re-characterize the claim as one arising under federal law for purposes of determining removal jurisdiction."); *Whitt v. Sherman International Corp.,* 147 F.3d 1325, 1330 (11th Cir. 1998) ("[T]his court has found that the jurisdictional issue in cases such as the one at hand is dependant upon whether the plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a).... If so, the court must re-characterize the plaintiffs claim as an ERISA claim and removal jurisdiction exists.... Conversely, if the plaintiff is not seeking relief that is available under Section 1132(a), no federal question jurisdiction exists.") (citation omitted). Moreover, "[i]f the plaintiff's claims are super preempted, then they are also defensively preempted." *Butero,* 174 F.3d at 1215. In other words, if Plaintiff's claims are found to be completely or super preempted, the removal of the claims was appropriate and the ITPE Health & Welfare Fund is entitled to summary judgment because preempted state law claims cannot proceed.

For a state law claim to be completely preempted, the following four elements must be satisfied: "First, there must be a relevant ERISA plan... Second, the plaintiff must have standing to sue under that plan... Third, the defendant must be an ERISA entity... Finally, the complaint must seek compensatory relief akin to that available under §1132(a). *Butero,* 174 F.3d at 1212.[5] Each of these elements is satisfied in this case.

---

[5] If the first three elements for complete preemption are satisfied, the claim in question obviously "relates to "an ERISA plan. As the Eleventh Circuit Court of Appeals has observed, "[t]he Supreme Court has broadly interpreted the phrase 'relate to' in ERISA's preemption clause so as to include any state law claim having 'a connection with or reference to' an employee's benefits plan....

### 1. The Plan at issue in this case was an ERISA plan.

The Eleventh Circuit Court of Appeals has adopted a "flexible analysis" for determining whether an ERISA plan has been established. *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991). An ERISA plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Stamen v. Paul Revere Life Insurance Co.*, 166 F.3d 1102, 1104 (11th Cir. 1999) quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). One further requirement for an ERISA plan is that the plan must provide benefits to at least one employee, not including an employee who also is the owner of the business in question. *Stamen*, F.3d at 1104. *See also Randol v. Mid-West National Life Insurance Company of Tennessee*, 987 F.2d 1547, 1550, n. 4 (11th Cir. 1993).

> For a plan to fall within ERISA's scope, the following five requirements must be met:
>> A welfare plan requires (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability... benefits... (5) to participants or their beneficiaries.

*Stamen v. Paul Revere Life Insurance Co.*, 166 F.3d 1102, 1104 (11th Cir. 1999),

---

This court has further instructed that state law claims 'relate to' an ERISA plan for preemption purposes 'whenever the alleged law conduct at issue is intertwined with the refusal to pay benefits.'" *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1065 (11th Cir. 1998) (citations omitted). *See also, Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir. 1987) ("[I]f a state law claim arises out of the administration of benefits under a plan, the claim is preempted.... Thus, this Circuit and other circuits have uniformly held that state law challenges to the denial of benefits under an employee benefit plan are preempted.") (citation omitted); *Franklin v QHG of Gadsden, Inc.*, 127 F.3d 1024, 1028 (11th Cir. 1997) ("The Supreme Court has given an expansive interpretation to the term 'relate to.' The court has held that a state law relates to an employee benefit plan 'if it has a connection with or reference to such a plan.'") (citation omitted).

quoting *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir. 1982).

The Plan at issue in this case meets all requirements for an ERISA plan. First, it is a "plan," i.e., there are "intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Butero* 174 F.3d at 1214, quoting *Donovan,* 688 F.2d at 1372. *See also, Randol,* 987 F.2d at 1550-1551, n.5 ("[T]here is no requirement that the employer play any role in administering the plan in order for it to be deemed an ERISA employee welfare benefit plan.")

The second and third requirements for an ERISA plan are satisfied because the Plan was "established or maintained" by "an employer" and "employee organization." The term "employee organization" means

> any labor union or any organization of any kind, or any agency or employee representation committee, association, group, plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).

There is no dispute that the Union is an organization that represents employees in an industry affecting commerce as defined in 29 U.S.C. § 142, and, thus, and employee organization within the meaning of 29 U.S.C. § 1002(4). Moreover the Plan is maintained by the ITPE Health & Welfare Fund, which is jointly administered by representatives of the Union and employers who are parties to the collective bargaining agreement.

The fourth requirement for an ERISA plan also obviously is satisfied because the plan established by the ITPE Health & Welfare Fund provides medical benefits, dental

benefits, vision care, disability income, survivor income, death benefits and a scholarship program. Finally, the fifth requirement for an ERISA plan has been met because the plan in this case provided benefits to participants or their beneficiaries. The Eleventh Circuit Court of Appeals has held that "the requirement that there exist an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person." *Randol,* 987 F.2d, at 1550, n. 4. *See also Williams v. Wright,* 927 F.2d 1540, 1545 (11th Cir. 1991) ("[W]e conclude that a plan covering only a single employee, where all other requirements are met, is covered by ERISA."). The Plan provided benefits to Plaintiff and other covered service employees and all requirements for the existence of an ERISA plan, therefore, have been met.

Accordingly, the Plan is a multi-employer plan within the meaning of 29 U.S.C. § 1002(37)(A) and is a quintessential example of an "employee benefits plan" under ERISA.

### 2. As a participant or beneficiary, Plaintiff has standing to sue under the plan.

Because an ERISA plan exists, the first requirement for complete preemption is satisfied. The second requirement is that the plaintiff must have standing to sue under the plan, and that requirement also is satisfied. Plaintiff was a participant in the ITPE Health & Welfare, and ERISA expressly provides that participants in a plan may bring suit to recover benefits under the plan. *See, e.g., Engelhardt v. The Paul Revere Life Insurance Company,* 139 F.3d 1346, 1351 (11th Cir. 1998) ("ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan--plan beneficiaries and plan participants. See 29 U.S.C. § 1132(a).") *Kemp v.*

*International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir. 1997) ("Section 1132(a) states that a participant or beneficiary of a 'plan' may bring suit 'to recover benefits due to him under the terms of his plan . . .' ").

### 3.   The ITPE Health & Welfare Fund is an ERISA entity.

The third requirement for complete preemption also is satisfied, because the ITPE Health & Welfare Fund is an ERISA entity. The ITPE Health & Welfare Fund provides health and welfare benefits for employees of contributing employers which include medical benefits, dental benefits, vision care, disability income, survivor income, death benefits and a scholarship program  Accordingly, the ITPE Health & Welfare Fund administers an "employee welfare benefit plan" within the meaning of Section 3(l) of ERISA. 29 U.S.C. § 1002(l) and a multi-employer plan within the meaning of 29 U.S.C. § 1002(37)(A). The Plan is a quintessential example of an "employee benefits plan" under ERISA. Further, the ITPE Health & Welfare Fund is the administrator of the plan, and "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mutual Life Insurance Company,* 114 F.3d 186,187 (11th Cir. 1997); *see also Hardy v. Welch,* 135 F.Supp.2d 1171, 1182 (M.D. Ala. 2000) ("The third *Butero* element - the existence of an ERISA entity - is also satisfied. Health Strategies, the administrator of the AHA plan, is an ERISA entity....").

### 4.   Plaintiff seeks relief that would be available under § 1132(a).

Finally, the last requirement for complete preemption is met because Plaintiff seeks relief that would be available under 29 U.S.C. § 1132(a), the civil enforcement section of ERISA. The Eleventh Circuit held that claims for fraud, bad faith, and breach of contract

fell within the scope of section 1132 because all of the claims sought the payment of benefits under the ERISA plan. *Butero,* 174 F.3d at 1213; *see also Engelhardt,* 139 F.3d at 1354 (holding that a claim for fraudulent inducement to enter into an insurance contract governed by ERISA was "essentially a challenge to [the insurers'] refusal to pay benefits" and thus fell within the scope of section 1132); *Franklin v. QHG, of Gadsden, Inc.*, 127 F.3d, 1024, 1029 (11th Cir. 1997) (holding that a claim based on a alleged misrepresentation that certain coverage would exist under a plan governed by ERISA was effectively a claim for benefits under the plan). In the instant case, Plaintiff seeks compensation from the ITPE Health & Welfare Fund because she incurred health care expenses for which the ITPE Health & Welfare Fund asserts no coverage was owed. Plaintiff's claims effectively are claims for benefits under the plan, and this is not affected by the fact that she also seeks punitive damages. *See Engelhardt,* 139 F.3d at 1354, n. 11. ("Although an ERISA beneficiary cannot obtain punitive damages in an action for benefits, the prayer for punitive damages does not take [the plaintiff's] claim out of the scope of §1132(a). If it did, any plaintiff could thwart Congress's intent to completely preempt claims arising out of the denial of ERISA benefits by artful pleading.").

All requirements for complete preemption clearly are satisfied in this case. As noted earlier, claims that are completely preempted also are defensively preempted, which means the claims cannot proceed. *See, Butero,* 174 F.3d at 1215. The ITPE Health & Welfare Plan's motion for summary judgment on Plaintiff's claims therefore are due to be granted. *See, e.g., Franklin,* 127 F.3d at 1029 (affirming a summary judgment on the grounds of complete preemption); *Williams v. Wright,* 927 F.2d 1540, 1550 (11th Cir. 1991)

(affirming a summary judgment based on preemption); *Mullenix v. Aetna Life and Casualty Insurance Company,* 912 F.2d 1406, 1413 (11t[h] Cir. 1990) (affirming a summary judgment based on preemption); *Amos v. Blue Cross-Blue Shield of Alabama,* 868 F.2d 430, 432 (11th Cir. 1989) (holding that state law claims "will survive preemption long enough to form the basis for federal question jurisdiction," but the claims then are "completely displace[d]."); *Hrabe v. The Paul Revere Life Insurance Company,* 951 F. Supp. 997, 1003 (M.D. Ala. 1996) (granting a summary judgment based on ERISA preemption).

Plaintiff has asserted only state law claims. She has not stated any claims under ERISA. Because all of her state law claims are preempted, Plaintiff has no viable cause of action. *See Hrabe,* 951 F.Supp. at 999, 1003 (when ERISA preempts all state law claims and no claim for benefits under ERISA is made, there are "no viable claims" and summary judgment is appropriate). The ITPE Health & Welfare Fund, therefore, respectfully requests the Court to enter an order granting a summary judgment on all claims in its favor.

### B.  The ITPE Health & Welfare Fund Did Not Wrongfully Deny Coverage.

Even if Plaintiff had made a claim for benefits under 28 U.S.C. § 1132 of ERISA, such claim would fail as a matter of law. There is no issue of material fact that the denial of benefits was based on the express language of an exclusion contained in the Plan. The Plan excluded from coverages all charges related to the "treatment of obesity." Plaintiff was diagnosed with morbid obesity. Gastric bypass surgery treats those who have morbid obesity by reducing the capacity of their stomach and causing their food to bypass a part of the stomach which absorbs much of the fat out of their food. The intended purpose of the surgery is to cause weight loss. Because gastric bypass surgery is a treatment for obesity, all charges related to gastric bypass surgery

are expressly excluded from coverage.

Because there can be no doubt that gastric bypass surgery is excluded from coverage under the Plan, Plaintiff may argue that it is entitled to benefits under the theory of equitable estoppel. However, as Eleventh Circuit precedent makes clear, equitable estoppel is unavailable to Plaintiff in this case.

The Eleventh Circuit "has created a very narrow common law doctrine under ERISA for equitable estoppel." *Katz v. Comprehensive Plan of Group Insurance, Alltell*, 197 F.3d 1084, 2090-91 (11th Cir. 1999). A plaintiff can use equitable estoppel to escape application of a written ERISA plan only if: "(1) the provisions of the plan at issue are ambiguous; and (2) representations are made which constitute an oral interpretation of the ambiguity." *Id.* Neither requirement is met in this case.

The Plan specifically excludes charges related to the "treatment of obesity." Any reasonable person who reads this language would understand that treatments for obesity are not covered. Plaintiff admits that she diagnosed with morbid obesity and concedes that the gastric bypass surgery was treatment for morbid obesity. Simply stated, the Plan provision at issue clearly and unambiguously excluded this treatment from coverage.

In any event, the representations that Plaintiff alleges were made to Jennifer Owes were not oral interpretations of a Plan ambiguity. The evidence is undisputed that neither Plaintiff nor Jennifer Owes had read the terms of the Plan when Jennifer Owes supposedly called the ITPE Health & Welfare Fund to inquire about coverage. Because she did not even know the terms of the Plan, Owes was obviously not seeking an oral interpretation of that Plan. The provision of the Plan excluding coverage for

charges related to obesity was not even discussed. Moreover, because the Plan provision was not ambiguous, as discussed above, there could not have been an interpretation of an ambiguous provision.

In sum, the terms of the Plan clearly provide that charges for treatment of obesity, such as gastric bypass surgery, are not covered. Moreover, estoppel is not applicable to this case because the terms of the Plan are not ambiguous and because the representations alleged by Plaintiff were not interpretations of an ambiguous provision of the policy.

### III. CONCLUSION

Plaintiff has only asserted state law claims and they are all preempted by ERISA. Because Plaintiff has asserted no claim under ERISA, she has no viable claim. Even assuming she had made a claim under ERISA for denial of coverage for gastric bypass surgery, the Plan language clearly excludes such treatments for obesity from coverage and estoppel is not applicable to the facts of this case. Accordingly, the ITPE Health & Welfare Fund respectfully requests that the Court grant its motion for summary judgment and enter judgment in its favor.

S/ Taylor P. Brooks
Taylor P. Brooks (asb-1064-r58t)
Attorney for ITPE Health & Welfare Fund

**OF COUNSEL:**
LANIER, FORD, SHAVER & PAYNE, P.C.
200 West Side Square
Suite 5000
Huntsville, Alabama 35801
(256) 535-1100

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this the 17th day of August, 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Brian P. Strength
> Valerie Rucker Russell
> Jock M. Smith
> COCHRAN, CHERRY, GIVENS & SMITH
> Post Office Box 830419
> Tuskegee, Alabama 36083

> S/Taylor P. Brooks
> Of Counsel